**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK SUNDAHL,<br>Plaintiff,<br>v.<br>COMERICA BANK; CONDUENT STATE AND LOCAL SOLUTIONS, INC. d/b/a DIRECT EXPRESS and DOES 1 through 10, inclusive,<br>Defendants. | Case No.: 3:25-cv-01473-RBM-DDL<br><br>**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>**[Doc. 12]** |

Pending before the Court is Defendants Comerica Bank and Conduent State & Local Solutions, Inc.'s (collectively, "Defendants") Partial Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("MTD"). (Doc. 12.) Plaintiff Mark Sundahl ("Plaintiff") filed an Opposition to Defendants' MTD (Doc. 13) and Defendants filed a Reply (Doc. 14).

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the MTD (Doc. 12) is **GRANTED**.

# I. BACKGROUND[1]

## A. Factual Background

Plaintiff, an individual over the age of sixty-five years old, "maintained a bank account with Defendants for his Social Security deposits," which is "linked to a Direct Express debit card." (Doc. 9, First Amended Complaint ["FAC"] ¶¶ 7–8, 18)[2] "On or about November 15, 2024, Plaintiff used the debit card at a 7-Eleven in San Diego." (*Id.* ¶ 9.) "[T]he purchase at 7-Eleven was the last time Plaintiff used and saw the card, and he is unsure what happened to it." (*Id.* ¶ 10.) "Plaintiff never gave his PIN to anyone and did not have it written down as it was memorized." (*Id.* ¶ 11.) "Plaintiff does not know who stole his card but speculates that someone in the store observed him enter his PIN and then took his card or the information was 'skimmed' after he used it at 7-Eleven." (*Id.* ¶ 12.) "Following his purchase to 7-Eleven, Plaintiff then went to purchase groceries and realized his card was missing." (*Id.* ¶ 13.)

"On or around November 15–16, 2024, a series of fraudulent transactions were made on Plaintiff's account totaling approximately $5,869.68." (*Id.* ¶ 14.) "On or about November 15, 2024, after noticing his card was missing, Plaintiff immediately called Defendants to report the lost card and cancel it." (*Id.* ¶ 15.) "On the call with Defendants to report his card as lost or stolen, the representative told Plaintiff that there were numerous transactions on that same day and listed the transactions and Plaintiff indicated they were all fraudulent transactions." (*Id.* ¶ 16.) "Plaintiff informed Defendants that all charges after the 7-Eleven charge were fraudulent" and "requested that the card be canceled." (*Id.* ¶ 20.) "Defendants' representative told Plaintiff that he would receive a reimbursement"

---

[1] The factual summary in this section reflects Plaintiff's allegations, not conclusions of fact or law by this Court. Well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] The Court cites the paragraph numbers of the FAC and the CM/ECF electronic pagination for other citations unless otherwise noted.

but Plaintiff alleges that "no reimbursement was ever provided." (*Id.* ¶ 21.) Plaintiff further alleges that Defendants "still permitted fraudulent charges to occur the following day and after the request that the card be canceled." (*Id.* ¶ 22.) On Plaintiff's request, "Defendant sent Plaintiff a statement listing all the transactions from November 2024." (*Id.* ¶ 23.) Plaintiff was provided with the monthly account statement for November 2024, which included the following transactions:

- November 15, 2024: Bank of America at Ralph's Sports Arena in San Diego for the amount of $1,004
- November 15, 2024: Target Sports Arena in San Diego in the amount of $538.84
- November 15, 2024: Wal-Mart in Kearny Mesa in San Diego in the amount of $192.87
- November 15, 2024: Wal-Mart in Kearny Mesa in San Diego in the amount of $653.73
- November 15, 2024: Macy's in La Jolla in the amount of $623
- November 15, 2024: Macy's in La Jolla in the amount of $246
- November 15, 2024: Nordstrom in La Jolla in the amount of $479.49
- November 15, 2024: Macy's in La Jolla in the amount of $207.96
- November 15, 2024: Levi's Outlet in San Ysidro in the amount of $104.49
- November 15, 2024: Tommy Hilfiger in San Ysidro in the amount of $566.20
- November 15, 2024: New Balance in San Ysidro in the amount of $220.85
- November 16, 2024: Fossil Stores in San Ysidro in the amount of $233.82
- November 16, 2024: Fossil Stores in San Ysidro in the amount of $798.43

(*Id.* ¶ 24.)

"The fraudulent transactions resulted in Plaintiff losing significant funds that he had accumulated through social security deposits." (*Id.* ¶ 27.) Plaintiff also filed a police report with the San Diego Police Department. (*Id.* ¶ 31.) "On November 15, 2024, Defendants sent Plaintiff a letter that it received his dispute regarding just the first charge in the amount of $1,004." (*Id.* ¶ 32.) "After receipt of this letter, Plaintiff called Defendant to explain that there were many other disputed charges and to request another letter from Defendant that listed all the disputed charges." (*Id.* ¶ 34.) "In that conversation, Plaintiff disputed all the fraudulent charges again and Defendants said Plaintiff's claim had already been denied." (*Id.* ¶ 35.) In November 2024, Plaintiff called Defendants for a third time, "to

inform them he had the police report number and to dispute the transactions." (*Id.* ¶ 36.) "Defendants said in that call it did not matter as the decision has already been made to hold Plaintiff responsible." (*Id.* ¶ 37.) Defendants also informed Plaintiff that he "could appeal the decision." (*Id.* ¶ 38.) "Plaintiff asked how he could file an appeal and requested to speak to the fraud department and Defendant[s] disconnected the call." (*Id.* ¶ 39.)

"On November 29, 2024, Defendants sent Plaintiff a letter determining that the transactions were not unauthorized and that no error occurred." (*Id.* ¶ 40.) "The letter indicated that its findings were based on one or more of the following:"

- Access to the account during the dispute period appears to be from authorized users and/or the named cardholder;
- The merchant was "Pre-Authorized" to debit the card and the authorization was not revoked;
- A review of your prior transactions with this or similar merchants and, in some instances, communication with the merchant confirmed the transaction was authorized.

(*Id.* ¶ 41.) Plaintiff claims that "Defendants' investigation was not reasonable" for several reasons. (*Id.* ¶ 45.) Plaintiff further claims that "Defendants' actions caused great concern, worry, frustration and emotional distress to Plaintiff" and that "[t]he stress caused Plaintiff's blood pressure to increase and caused significant loss of sleep." (*Id.* ¶ 50.)

**B. Procedural Background**

On May 6, 2025, Plaintiff filed a Complaint in the Superior Court of the State of California for the County of San Diego ("San Diego Superior Court") asserting two causes of action for: (1) financial elder abuse under California's Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code § 15600 *et seq*. ("Elder Abuse Act); and (2) violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA"). (*See* Doc. 1-2, Ex. A at 6–12.) Defendants removed the Complaint on June 9, 2025, and filed their first motion to dismiss shortly thereafter. (*See* Docs. 1–2.) This Court granted Defendants' first motion to dismiss on January 15, 2026, and dismissed the Complaint with leave to amend. (*See* Doc. 8 ["First MTD Order"].) On February 5, 2026, Plaintiff filed

the FAC. (Doc. 9.) Defendants filed the instant MTD shortly thereafter. (Doc. 12.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556–57). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## III. DISCUSSION

Defendants seek to dismiss only Plaintiff's First Cause of Action for violations of the Elder Abuse Act.[3] (*See* Doc. 12-1 at 7–11.)

---

[3] Defendants do not challenge Plaintiff's Second Cause of Action for violations of the EFTA. (*See* Doc. 12-1.)

The Elder Abuse Act defines an "elder" as a person, residing in California, 65 years of age or older. Cal. Welf. & Inst. Code § 15610.27.[4] As relevant here, financial abuse of an elder occurs when a person or entity:

> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both.
>
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both.

§ 15610.30(a)(1)–(2). An entity engages in conduct for "wrongful use" when it "knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." § 15610.30(b); *see Bortz v. JPMorgan Chase Bank, N.A.*, Case No.: 21-CV-618 TWR (DEB), 2022 WL 1489832, at *3 (S.D. Cal. May 10, 2022), *aff'd sub nom. Bortz v. JP Morgan Chase Bank, N.A.*, No. 22-55582, 2023 WL 4700640 (9th Cir. July 24, 2023) ("Under [§ 15610.30(b)], wrongful conduct occurs only when the defendant actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach.") (quoting *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 658 (2016)) (cleaned up).

In the MTD, Defendants argue that Plaintiff fails to state a financial elder abuse claim under a direct retention or assistance theory. (Doc. 12-1 at 7.) Plaintiff contends he has "properly alleged that Defendants directly retained his funds and knew or should have known it would have been harmful to him" and that "Defendants assisted in the financial abuse of an elder." (Doc. 13 at 7.) The Court addresses each argument in turn.

**A. Direct Retention Theory**

In its First MTD Order, the Court held that Plaintiff failed to state a financial elder

---

[4] The Parties do not dispute that Plaintiff was at least 65 years of age at the time of the events in question. (*See* Doc. 9 [FAC] ¶ 18.)

abuse claim based on a "direct taking" under § 15610.30(a)(1) because the Complaint "provide[d] no facts to support that Defendants 'knew or should have known that this conduct is likely to be harmful' to Plaintiff" and it "contain[ed] no factual allegations about the transactions at issue, such as the reasons why Plaintiff believes such transactions were unauthorized . . . , to raise a plausible inference that Defendants initiated the fund transfers for 'wrongful use.'" (Doc. 8 at 5 (internal citations omitted).)

In the FAC, Plaintiff now provides additional allegations including that Defendants' refusal to reimburse Plaintiff "in contravention of the EFTA constitutes an unlawful retaining of funds that Plaintiff had a right to receive" and "[i]f Defendants had conducted a reasonable investigation they would have known that Plaintiff had a right to said funds." (Doc. 9 [FAC] ¶¶ 53–55.) Specifically, Plaintiff argues that "[c]ourts have determined that if Plaintiff was legally entitled to [ ] money at that time, such money was 'personal property' within the meaning of the elder abuse claim, and [defendants'] retention of this personal property was a potential violation of California's financial elder abuse statute." (Doc. 13 at 7 (citing *Johnston v. Allstate Ins. Co.*, No. 13-CV-574, 2013 WL 2285361, at *4 (S.D. Cal. May 23, 2013); *Crawford v. Cont'l Cas. Ins. Co.*, No. SACV 14-00968, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014)) (cleaned up).) Defendants argue that Plaintiff again fails to state a financial elder abuse claim based on direct retention "[b]ecause the FAC alleges nothing more than the processing of transactions and the denial of a reimbursement request" which do not constitute a "taking" or "retention" under § 15610.30. (Doc. 12-1 at 8–10.) The Court agrees.

"[A]n entity 'retains' property 'when an elder . . . is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder.'" *Rittenmeyer v. Wells Fargo, N.A.*, 822 F. Supp. 3d 1113, 1117 (E.D. Cal. 2026) (emphasis in original) (quoting Cal. Welf. & Inst. Code § 15610.30(c)). "An entity does not violate § 15610.30(a)(1) when it simply processes a transaction involving a third party." *Id.*; *see Miller v. Bank of Am., N.A.*, Case No. 1:21-CV-00337-JLT, 2022 WL 3704093, at *5 (E.D.

Cal. Aug. 26, 2022) ("Where, as here, an account owner initiated the transfers, third party scammers obtained the funds, and the defendant bank merely processed the transactions, there is no claim for a 'direct taking' under § 15610.27(a)(1).").

Further, Plaintiff's cited cases are distinguishable because the FAC "does not allege that Defendant . . . breach[ed] any contract by failing to pay the funds." *Rittenmeyer*, 822 F. Supp. 3d at 1117–18 (finding contract related cases where the elder paid premiums to the insurer and the insurer allegedly refused to pay benefits owed under the policy did "not support [the plaintiff's] claim"). "The Court does not read these cases to extend to a bank's refusal to refund a customer's money, at least when, as here, the [FAC] does not allege the bank was contractually obligated to pay the funds." *Mcquerter v. Jpmorgan Chase Bank, N.A.*, Case No.: 26-cv-00007-DMS-JLB, 2026 WL 1365031, at *3 (S.D. Cal. May 15, 2026) (analyzing *Crawford*, 2014 WL 10988334, at *2). The Court therefore finds that Plaintiff has failed to state a claim for financial elder abuse based on direct retention.

**B. Assistance**

Under § 15610.30(a)(2), "liability may be imposed for 'assisting' in financial elder abuse under an aiding and abetting standard." *Bortz v. JPMorgan Chase Bank, N.A.*, Case No.: 21-CV-618 TWR (JLB), 2021 WL 4819575, at *3 (S.D. Cal. Oct. 15, 2021) (citing *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744–45 (2010)). "This requires the plaintiff to plead that the defendant 'knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act.'" *Id.* (quoting *Das*, 186 Cal. App. 4th at 744). "To be liable for elder abuse, there must be actual knowledge, not constructive knowledge." *Alexander v. Wells Fargo Bank, N.A.*, Case No.: 23-cv-617-DMS-BLM, 2023 WL 8358550, at *4 (S.D. Cal. Dec. 1, 2023) (citation omitted). When "a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third party's wrongful conduct." *Das*, 186 Cal. App. 4th at 745.

In its First MTD Order, the Court dismissed Plaintiff's claim for assistance in financial elder abuse because Plaintiff failed to "sufficiently plead that Defendant had

actual knowledge of, or provided assistance or encouragement in, the alleged fraud." (Doc. 8 at 5.) In the FAC, Plaintiff alleges that on November 15, 2024, he "called Defendants to report the lost card and cancel it" but Defendants "still permitted fraudulent charges to occur the following day and after the request that the card be canceled." (Doc. 9 [FAC] ¶¶ 15, 22.) But Plaintiff again fails to allege that Defendants provided assistance or encouragement in the alleged fraud. (*See generally id.*)

And "[w]hile Plaintiff points to 'the suspicious circumstances' of the funds transfer, courts in analogous cases have concluded that suspicion of fraud is not enough to state a claim for elder abuse." *Rittenmeyer*, 822 F. Supp. 3d at 1119 (collecting cases). The district court in *Rittenmeyer* found that similar allegations were insufficient to "to allege that [a defendant bank] violated the Elder Abuse Act by assisting the fraudster in taking his funds." *See* 822 F. Supp. 3d at 1119. There, the plaintiff alleged that the defendant bank contacted him regarding suspicious activity on his account, he stated the activity was unauthorized, he went to the local branch to dispute it in person, and the defendant bank's representatives "were able to contact the corporate representatives . . . to supposedly stop, or block, the wire transfer." *Id.* at 1115. The court found these allegations did not sufficiently plead that the defendant bank had actual knowledge of the fraud when it processed the wire transfer. *Id.* at 1117.

Here, Plaintiff alleges that Defendants had constructive knowledge, as opposed to the requisite actual knowledge. *See Bortz*, 2022 WL 1489832, at *6 (dismissing financial elder abuse claim under § 15610.27(a)(2) and finding plaintiff asserted "textbook allegations of constructive knowledge" where he alleged that defendants had actual knowledge of the alleged fraud through "a profound change in their banking pattern"). "Even Plaintiff's alleged notice to Defendants of the fraud is not enough—all it establishes is that Plaintiff reported what [he] characterized as fraud to the banks." *Smith v. Wells Fargo Bank, N.A.*, 809 F. Supp. 3d 922, 939 (N.D. Cal. 2025). Indeed, Plaintiff alleges that "[o]n November 29, 2024, Defendants sent Plaintiff a letter determining that the transactions were not unauthorized and that no error occurred." (Doc. 9 [FAC] ¶ 40.)

Because Plaintiff's allegations that Defendants should have known about the underlying fraud "fall short of the requisite actual knowledge," and he fails to allege that Defendants provided substantial assistance or encouragement to the alleged fraud, the Court finds that Plaintiff fails to state a claim for assistance in financial elder abuse. *See Bortz*, 2022 WL 1489832, at *6; *Gray v. JPMorgan Chase Bank, N.A.*, 661 F. Supp. 3d 991, 999 (C.D. Cal. 2023), *aff'd*, No. 23-55318, 2024 WL 1342619 (9th Cir. Mar. 29, 2024) (dismissing financial elder abuse claim where plaintiffs did "not plead facts establishing that [the bank] had actual knowledge of or intentionally assisted in carrying out the fraudulent scheme."); *Miller*, 2022 WL 3704093, at *5 (dismissing claim for assisting a direct taking under § 15610.27(a)(2) where the plaintiff had not "pled facts alleging [the bank's] direct knowledge of the scam."). Defendants' MTD is therefore **GRANTED**.

**C. Leave to Amend**

Generally, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). When assessing whether leave to amend is proper, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (cleaned up).

This Court previously granted Plaintiff leave to amend the Complaint. (*See* Doc. 8 at 11.) In doing so, the Court found that Plaintiff failed to state a financial elder abuse claim based on a "direct taking" because Plaintiff did not sufficiently allege that Defendants "knew or should have known that this conduct is likely to be harmful" as required to establish that Defendants initiated the fund transfers for "wrongful use." (*Id.* at 5.) The Court also explained that Plaintiff was required to plead actual knowledge to state a claim for "assisting" in financial elder abuse. (*See id.* at 4–5.) Although Plaintiff provided additional allegations in the FAC, these allegations fail to establish that

Defendants "retained" Plaintiff's property "for wrongful use" or that Defendants had actual knowledge of, or intentionally assisted in carrying out, the alleged fraud. "Because Plaintiffs do not—and, it appears, cannot—allege additional facts to cure the deficiency, leave to amend is inappropriate." *Bortz*, 2022 WL 1489832, at *8 (citation omitted). Accordingly, the Court **DENIES** Plaintiff leave to amend.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' MTD (Doc. 12) is **GRANTED**. The First Cause of Action is therefore **DISMISSED WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED**.

DATE: September 30, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE